UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
LIONEL PIERRE,                                                      :   18-cv-05438 (ARR) (RER)
Plaintiff                                                           :
                                                                    :   <u>NOT FOR PRINT OR
    -against-                                                       :   ELECTRONIC
                                                                    :   PUBLICATION</u>
THE CITY OF NEW YORK *et al*                                        :
Defendants.                                                         :   <u>OPINION & ORDER</u>
                                                                    :
                                                                    X
-------------------------------------------------------------------

ROSS, United States District Judge:

Plaintiff Lionel Pierre brings this civil rights action under 42 U.S.C. § 1983 and New York state common law against the City of New York, Police Officer Michael Carleo, Detective Martin Maloney, and John Does #1–5. He asserts claims of false arrest, unlawful search, malicious prosecution, malicious abuse of process, excessive force, municipal liability, conspiracy, and failure to intervene. All of the claims arise from an incident on November 23, 2015, wherein Mr. Pierre was arrested on the basis of what would later be discovered to be an outdated police alert flagging his vehicle. While I find it troubling that this police error apparently led to Mr. Pierre being arrested without actual cause, I grant summary judgment for defendants. Assuming all inferences in favor of the plaintiff, he has not stated a triable claim on any of the causes of action he asserted.

## BACKGROUND

On November 23, 2015, Police Officers Carleo and Maloney were driving an unmarked police vehicle equipped with a license plate reading device. Pl.'s Resp. R. 56.1 ¶ 11, ECF No. 31-1. The two officers stopped Mr. Pierre's car, which was a silver BMW with the license plate

1

number GNB 2467. *See id.* ¶¶ 1, 14. When they approached the car, Mr. Pierre was on the phone. *Id.* ¶ 15. Mr. Pierre alleges that the officers had their guns drawn and pointed at him. *See* Pierre Dep. Ex. M, at 94:20–22, ECF No. 31-2. Mr. Pierre either voluntarily exited or was dragged out of the car and then was placed in handcuffs and seated on the concrete median. Pl.'s Resp. R. 56.1 ¶¶ 17, 19. Mr. Pierre alleges that an officer hit his hand with his gun, knocking his phone out of his hand. Pierre Dep. Ex. A, at 126:1–8, ECF No. 28-1. He also alleges his handcuffs were so tight that his hands felt numb. *See id.* 116:9–117:6. Officer Carleo briefly searched the car, and retrieved the title to the vehicle from the center console. *See* Pl.'s Resp. R. 56.1 ¶¶ 22–23. The title stated that the vehicle was stolen. *See* New York State Certificate of Title Ex. G, ECF No. 28-7. Mr. Pierre was transported to the 113th Precinct. Pl.'s Resp. R. 56.1 ¶ 26. Officer Carleo then voided the arrest and released Mr. Pierre. *Id.* ¶ 28. In defendants' telling, Mr. Pierre was detained for less than two hours, but Mr. Pierre states he was detained for five to seven hours. *Id.* ¶ 29. Mr. Pierre never sought any medical treatment for any alleged injuries sustained during the incident. *Id.* ¶ 37. There is a video from Mr. Pierre's dashboard camera which partially records the incident, but does not capture the key details described by either party. *See* Video Recording Def.'s Reply Ex. K, ECF No. 30.

The parties disagree about why this arrest occurred. Mr. Pierre attributes the arrest to a conspiracy by NYPD officers to harass and retaliate against him. *See* Pl.'s Resp. R. 56.1 ¶¶ 13, 18. Defendants state that the stop occurred because when the officers scanned Mr. Pierre's license plate, the license plate reading device triggered an alert in the New York Statewide Police Information Network ("NYSPIN") indicating that the car was flagged as stolen. *See id.* ¶¶ 12–13. After the stop, Officer Carleo contacted NYPD's communication division, who

confirmed that the license plate was marked as stolen in the NYSPIN. *Id.* ¶¶ 20–21. Defendants also state that Mr. Pierre admitted the car was stolen and the vehicle title stated the car was stolen. *Id.* ¶¶ 18, 24.

But the officers were mistaken that the NYSPIN alert on Mr. Pierre's license plate related to an unsolved car theft. After Mr. Pierre was brought to the precinct, Officer Carleo learned that the alert actually related to a prior criminal investigation for menacing, for which Mr. Pierre had already been arrested approximately one year earlier.[1] *See id.* ¶¶ 9, 27. According to defendants, this alert should have been removed after the 2014 arrest, but mistakenly had not been removed, such that Mr. Pierre was unnecessarily subject to a second arrest in 2015. *Id.* ¶ 10. Upon discovering the mistake, Officer Carleo voided the arrest, released Mr. Pierre, and removed the alarm on his car from NYSPIN. *Id.* ¶ 28. Mr. Pierre disputes the validity of the initial issuance of the alert on his car and the 2014 arrest, maintaining that both were based on fabricated evidence.[2] *See id.* ¶¶ 2–3.

---

[1] According to defendants, the NYSPIN alert was entered after a witness reported that somebody in a car matching the description of Mr. Pierre's car was brandishing a firearm and yelling threats. *See* Pl.'s Resp. R. 56.1 ¶¶ 1–2. The witness also identified Mr. Pierre in a photo array. *Id.* ¶ 3. In addition to the NYSPIN alert, an identification card ("I-Card") was issued for Mr. Pierre. *See id.* ¶ 4. An I-card is an "internal NYPD tracking system for people that are wanted as perpetrators of [a] crime or witnesses to a crime." *Id.* ¶ 5. Mr. Pierre disputes that these events occurred and states the evidence was fabricated by the police. *See id.* ¶¶ 2–5. Mr. Pierre was arrested pursuant to the I-Card on November 21, 2014. *Id.* ¶ 9.
[2] That arrest is the subject of another lawsuit by Mr. Pierre against NYPD officers and the City of New York. *See Pierre v. Rocco*, No. 17-cv-04657 (LDH) (LB) (E.D.N.Y. August 3, 2017).

3

On September 27, 2018, Mr. Pierre brought this lawsuit under 42 U.S.C. § 1983 and New York state common law alleging violations of his civil rights including false arrest, unlawful search, malicious prosecution, malicious abuse of process, excessive use of force, municipal liability, conspiracy, and failure to intervene. *See* Compl., ECF No. 1. Mr. Pierre was previously represented by an attorney, but now is proceeding pro se. *See* Stipulation to be Relieved as Counsel, ECF No. 17. On August 22, 2019 defendants moved for summary judgment.

**STANDARD OF REVIEW**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "can affect the outcome under the applicable substantive law[.]" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). A genuine dispute is one that can "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In performing this analysis, I must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "If, in this generous light, a material issue is found to exist, summary judgment is improper, and the case must proceed to trial." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir. 1999) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), *superseded by rule on other grounds*, Fed. R. Civ. P. 11(c)(1), *as recognized in Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012)).

The moving party may demonstrate that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223–24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If this burden is met, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir. 1994)). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Bacchus Assocs. v. Hartford Fire Ins. Co.*, 766 F. Supp. 104, 108 (S.D.N.Y. 1991). "The nonmoving party cannot defeat summary judgment by 'simply show[ing] that there is some metaphysical doubt as to the material facts,' or by a factual argument based on 'conjecture or surmise[.]'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (alteration in original) (first quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), then quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)). If "no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

## DISCUSSION

Defendants moved for summary judgment on all of Mr. Pierre's claims: false arrest, unlawful search, malicious prosecution, malicious abuse of process, excessive use of force, municipal liability, conspiracy, and failure to intervene. I will address each claim in turn.

I. **False Arrest**

To state a claim for false arrest under § 1983 or New York law, "a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." *Douglas v. City of New York*, 595 F. Supp. 2d 333, 339–40 (S.D.N.Y. 2009). Probable cause is a complete defense against claims of false arrest. *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (citing *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)); *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 28–29 (E.D.N.Y. 2015). Probable cause exists when a police officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)).

Under the collective knowledge doctrine or "fellow officer" rule, "an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001); *see also Annunziata v. City of New York*, 06 Civ. 7637(SAS), 2008 WL 2229903, at *3 (S.D.N.Y. May 28, 2008) (quoting *People v. Ramirez-Portoreal*, 666 N.E.2d 207, 215 (N.Y. 1996)) ("[E]ven if an arresting officer lacks personal knowledge sufficient to establish probable cause, the arrest will be lawful if the officer acts upon the direction of or as a result of communication with a superior or [fellow]

6

officer . . . provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest.").

"[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983)). Thus, the fact that the information the arresting officer relied on later turns out to be inaccurate does not invalidate the existence of probable cause at the time of the arrest if the officer acted reasonably. *See United States v. Towne*, 870 F.2d 880, 884–85 (2d Cir. 1989) (upholding an arrest based on a mistaken warrant where officer took additional steps to verify the warrant).

Defendants argue that this case is governed by *Towne*, because like the officers in *Towne*, Officers Carleo and Maloney relied on a record, which later turned out to be inaccurate, but took additional steps in a reasonable attempt to confirm the record. *See* Defs.' Br. 6, ECF No. 26. Defendants assert three additional verification steps taken by the arresting officers: (1) speaking to the plaintiff who admitted the car was stolen; (2) contacting the NYPD communication division who confirmed (incorrectly) that the license plate was stolen; and (3) retrieving the title to the vehicle which also indicated that the vehicle was stolen. But plaintiff's admission is disputed, so I do not consider the admission for purposes of summary judgment, and the officers seized Mr. Pierre by putting him in handcuffs before they called NYPD's communication division or reviewed the vehicle's documentation, so those verifying actions were not part of the information available to the officers at the time of the initial arrest. *See* Pl.'s Resp. R. 56.1 ¶¶ 18–24.

7

Thus, the issue in this case is whether an inaccurate NYSPIN alarm *alone* constitutes probable cause for arrest. In at least one case, a federal court has ruled that it does not. *See Rowley v. City of New York*, No. 00 Civ. 1793 (DAB), 2005 WL 2429514, at *21–23 (S.D.N.Y. Sept. 29, 2005). The *Rowley* court granted summary judgment for the plaintiff on his false arrest claim where "police officers relied solely on the admittedly inaccurate computer information that the car was stolen in arresting the four Plaintiffs for grand larceny auto." *Id.* at *21, *26. The court stated that while a NYSPIN alert could justify further investigation, it did not justify the officers' conduct, which is similar to the conduct Mr. Pierre alleges in this case. *See id.* at *21–22 (describing "the rapid approach of undercover officers with drawn guns"). There is also New York state case law holding that an arrest made solely on the basis of inaccurate records in the NYSPIN database is not justified by probable cause. *See People v. Jennings*, 54 N.Y.2d 518, 520 (N.Y. 1981) ("An arrest is invalid when the arresting officer acts upon information in criminal justice system records which, though correct when put into the records, no longer applies and which, through fault of the system, has been retained in its records after it became inapplicable."); *People v. McElhaney*, 146 Misc. 2d 748, 750 (N.Y. Sup. Ct. 1990) ("In this case, the stolen car alarm should have been removed from the computer system . . . There is absolutely no excuse for that procedure not to have been accomplished."); *People v. Jones*, 443 N.Y.S.2d 298, 300, 304–05 (N.Y. Crim. Ct. 1981).

However, another court to consider the issue held that a NYSPIN stolen car alert is sufficient to constitute probable cause for arrest. *See Apostol v. City of New York*, No. 11–CV–3851 (RRM)(CLP), 2014 WL 1271201, at *4 (E.D.N.Y. Mar. 26, 2014), *aff'd on other grounds*, 607 F. App'x 105 (2d Cir. 2015) (summary order). The Second Circuit has not ruled on this

precise question, but has allowed police officers to rely on arrest warrants found through searching NYSPIN as probable cause to make arrests. *See United States v. Miller,* 265 F. App'x 5, 7 (2d Cir. 2008) (summary order) ("When an officer learns from a computer database, such as NYSPIN, that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person."); *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999) (holding that reliance on statewide computer database record erroneously showing existence of outstanding arrest warrant for defendant was objectively reasonable); *see also Morrison v. City of New York*, No. 14-CV-04508 (MKB), 2019 WL 175121, at *7 (E.D.N.Y. Jan. 10, 2019), *reconsideration denied*, No. 14-CV-4508 (MKB), 2019 WL 4010106 (E.D.N.Y. Aug. 13, 2019).

A third approach, adopted by at least one court, is to hold that whether or not the NYSPIN alert constituted probable cause, the defendants were entitled to qualified immunity. *See Mayer v. City of New Rochelle*, No. 01 Civ. 4443(MBM), 2003 WL 21222515, at *4 (S.D.N.Y. May 27, 2003). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citations and quotation marks omitted).

The inevitable conclusion from the record is that there should not have been an alarm on Mr. Pierre's car on November 23, 2015 and he should not have been stopped and arrested on that date. A mistake was made. But there is no clearly established law stating that such a mistake violates the right to be free from unreasonable seizures. *See Mayer*, 2003 WL 21222515, at *4. Therefore, I conclude that the officers' conduct is protected by qualified immunity.

Plaintiff appears to be making two additional arguments about his arrest which I will briefly address. First, he argues that he was not arrested on November 23, 2015 because of the NYSPIN alert, but instead because of a police conspiracy to harass him. *See* Pl.'s Resp. R. 56.1 ¶ 13 This assertion is entirely unsubstantiated by evidence other than Mr. Pierre's conclusory statements. *See, e.g.*, Pierre Dep. Ex. M, at 89:18–25. ("They [were] using the same tactic. . . . It's a conspiracy.") This is not enough to overcome summary judgment. *See Bacchus Assocs.*, 766 F. Supp. at 108. ("Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact.").

Second, Mr. Pierre argues that the NYSPIN alert was originally entered into the database based on fabricated evidence. *See* Pl.'s Resp. R. 56.1 ¶¶ 2–5. But even assuming that claim is true, it does not establish a false arrest in the instant case. Even if the initial witness complaint in 2014 was fabricated, this does not change the reality that on November 23, 2015, Officers Carleo and Maloney were faced with an NYSPIN alarm which gave them arguable probable cause to arrest Mr. Pierre. Therefore, I grant summary judgment for the defendants as to Mr. Pierre's false arrest claim.

**II.     Unlawful Search**

"Under the 'automobile exception' to the Fourth Amendment's warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004) (citing *Carroll v. United States*, 267 U.S. 132, 151–62 (1925)). There is no dispute that in this case the car was readily mobile, so this exception applies.

As discussed in the prior section, the NYSPIN alert gave Officer Carleo, at a minimum, arguable probable cause to believe the vehicle was stolen. Information that the vehicle was stolen constitutes probable cause to believe the vehicle will contain evidence of the theft. Therefore, the search for the vehicle's title is protected by qualified immunity, and I grant summary judgment for defendants on this claim.

### III. Malicious Prosecution and Malicious Abuse of Process

To state a claim for malicious prosecution, four elements must be shown: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

"[A] malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994).

Mr. Pierre has failed to state either claim, most obviously because soon after he was arrested, the arrest was voided and he was released. The initiation of criminal proceedings giving rise a malicious prosecution claim requires either an arrest warrant or an arraignment, neither of which occurred in this case. *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995). An arrest does not lead to a regularly issued legal process, a requirement of malicious abuse of process, if "the charges were dropped and [the arrestee] was released without arraignment." *Gordon v. City of New York*, No. 10–cv–5148 (CBA)(LB), 2012 WL 1068023, at *8 (E.D.N.Y. Mar. 29, 2012).

Therefore, I grant summary judgment for defendants on both Mr. Pierre's malicious prosecution claim and his malicious abuse of process claim.

### IV. Excessive Use of Force

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Whether the force used to effect an arrest is 'reasonable' or 'excessive' turns on 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.'" *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Graham*, 490 U.S. at 396). In other words, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).

Here, even if I assume the truth of all of Mr. Pierre's allegations, he has not stated a claim for excessive force. He alleges that officers drew their guns, Pierre Dep. Ex. M, at 94:20–

22, dragged him out of the car, *id.* at 103:1–24, and hit his hand with a gun, knocking his phone out of his hand, Pierre Dep. Ex. A, at 126:3–8. None of these allegations is sufficient to maintain an excessive use of force claim because this level of force is reasonably related to effectuating an arrest. *See, e.g.*, *Faruki v. City of New York*, 517 Fed. App'x 1, 2 (2d Cir. 2013) (summary order) ("Officers are entitled to use some degree of force when restraining a suspect during an arrest.").

Mr. Pierre also alleges that he was handcuffed too tightly, causing his hands to feel numb. *See* Pierre Dep. Ex. A, at 116:9–117:6. In evaluating an unreasonably tight handcuffs excessive force claim, the court must consider three elements: (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists. *See Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005). Mr. Pierre's tight handcuffing claim fails because he testified that he did not remember if he told an officer that his handcuffs were too tight, *see* Pierre Dep. Ex. A, at 117:24–118:12, and he has not demonstrated any injury to his wrists.

Thus, I grant summary judgment to defendants on Mr. Pierre's excessive use of force claim.

V. **Municipal Liability**

"[A] municipality can be found liable under [42 U.S.C.] § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). "Thus, [the] first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link

between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385.

Plaintiff has failed to identify any municipal policy that caused a denial of his constitutional rights. If there was a policy of keeping outdated alerts in NYSPIN, or failing to audit the system to ensure its accuracy, it is possible that such a policy could form the basis of a *Monell* claim. But Mr. Pierre has identified no evidence that would allow me to conclude that such a policy exists, beyond alleging he was individually affected by a NYSPIN error in this single instance. Thus, Mr. Pierre cannot maintain a municipal liability claim and I grant summary judgment for defendants.

## VI. Conspiracy

"[C]onspiracy claims . . . must contain factual allegations. Conclusory or vague allegations of conspiracy are insufficient to survive a motion for summary judgment." *Zaidi v. Amerada Hess Corp.*, 723 F. Supp. 2d 506, 515 (E.D.N.Y. 2010). In this case, plaintiff's allegations of conspiracy do not go beyond conclusory of vague allegations. *See, e.g.*, Pierre Dep. Ex M, at 89:18–25. ("They [were] using the same tactic. . . . It's a conspiracy.") Moreover, he has established no other violation of a constitutional right, which also defeats a conspiracy claim. *See Raffaele v. City of New York*, 144 F. Supp. 3d 365, 375 (E.D.N.Y. Oct. 30, 2015). Thus, I grant summary judgment for defendants on the conspiracy claim.

## VII. Failure to Intervene

Mr. Pierre cannot sustain his failure to intervene claim because such a claim can proceed only in connection with a valid underlying constitutional claim. *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012) ("[A] failure to intervene claim is

14

contingent upon the disposition of the primary claims underlying the failure to intervene claim."). In this case, I have already held that plaintiff's underlying claims all fail; therefore, defendants' motion for summary judgment on the failure to intervene claim is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. As such, plaintiff's claims are dismissed. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

Date: December 30, 2019 _____/s/_____

Brooklyn, New York  Allyne R. Ross